Supreme Court of Pennsylvania

Court of Common Pleas
Civil Cover Sheet

_____ County

| For Prothonotary Use Only: |
| Docket No: |
| CD# 38-2024 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
- ☑ Complaint
- ☐ Writ of Summons
- ☑ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Shawn Wallace | Department of Corrections |

| Are money damages requested? ☑ Yes  ☐ No | Dollar Amount Requested: (check one) | ☐ within arbitration limits  ☑ outside arbitration limits |

| Is this a *Class Action Suit*?  ☐ Yes  ☑ No | Is this an *MDJ Appeal*?  ☐ Yes  ☑ No |

Name of Plaintiff/Appellant's Attorney: _____

☑ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:
  _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:
  _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:
  _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
  _____
- ☐ Other:
  _____
  _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:
  _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
- ☐ Zoning Board
- ☐ Other:
  _____
  _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☑ Other:
  42 USC 1983

*Updated 1/1/2011*

In The Court of Common Pleas

Of The 37th Judicial District of Pennsylvania

Forest County Branch - Civil

APR 29 '24 AM10:07
FILED FOREST COUNTY

Shawn Wallace, Plaintiff, Pro Se

v.                                                     No. 38-2024

Department of Correction; L.Harry;

G.Little; J.Barnacle; D.Radziewicz;                    Civil Action

D.Oberlander; R.Irwin; J.Blicha; Duffy;

I.Gustafson; C.Mongelluzzo; J.Alexander;               Jury Trial Demand

C.Deal; J.Kundick; S.Kopchick; J.Beatty

Hollis; Weiland; J.Walker; Dietrich;

Haggerty; R.Bell; A.Deimer; Duffy; Couch;

N.Carbon; G.Lowe; Blum; K.Mohney; Crowl;

J.Beatty; K.Clark; B.Moore; McCracken;

McNaughton; Hagg; R.Adams; Steele; Becker;

Shelly; Guarneri; W.D.Spencer; K.Bauer; J.Minich;

B.Rittenhouse; A.Ferguson; T.Williams; A.S.Richards;

MD.Maxa; A.J.Moore; E.G.Moores; Z.Termine; S.Crose

S.Bentley; RN-K.Hill; RN-S.Ferdarko; RN-S.Deeter;

RN-B.Avenali; LPN-M.Depew; K.Smith; L.Piscus;

J.Wilson; J.Smith; RN-B.Rumclk; J.J.Mowery;

T.K.Yount; J.Bollers; W.R.Wagonsellor; J.Dupont

Defendants.

APR 29 '24 AM 10:07
FILED FOREST COUNTY

## Complaint

Plaintiff, Shawn Wallace, hereby files this civil action due to inhumane conditions of his confinement that violates the Constitution and Laws of the United States and Commonwealth of Pennsylvania. Plaintiff seeks damages and injunctive relief.

## I. Jurisdiction

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C subsections 1331 and 1343(a)(3). Pursuant to Plaintiff's claims Under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), the court has jurisdiction Under 42 U.S.C Sections 12101 et seq and 29 U.S.C Section 794. For declaratory and injunctive relief, the court has jurisdiction Under 28 U.S.C subsection 2201, 2202, 2283 2284, as well as Rule 65 of the Federal Rules of Civil Procedure. Finally, the court has supplemental jurisdiction over Plaintiff's state-law claims Under the Medical Care Availability and Reduction of Error (MCARE) act pursuant to 28 U.S.C Section 1367(a) as well as 40 P.S. Section 1303.103

2. Plaintiff is an Adult Individual and Citizen of the United States that reside at Forest that is located at 286 Woodland Drive, Marienville Pennsylvania 16239.

3. Department of Corrections (D.O.C), is a Commonwealth Executive Agency.

4. L. Harry (Harry), is the DOC Secretary and Can be Served at 1920 Technology Parkway, Mechanicsburg, Pennsylvania 17050.

5. G. Little (Little), was the Former Acting Secretary for the D.OC and Can be Served at 1920 Technology Parkway, Marienville Pennsylvania 17050

6. J. Barnacle (Barnacle), is the Department of Corrections Head Director of Bureaus of Investigation and Intelligence (B.I.I) and Can be Served at 1920 Technology Parkway, Mechanicsburg Pennsylvania 17050.

7. D. Radziewicz, is the Department of Corrections Special Assistant to the Secretary / PREA Coordinator and Can be Served at 1920 Technology Parkway, Mechanicsburg Pennsylvania 17050.

8. D. Oberlander (Oberlander) was the Former Superintendent of SCI-Forest (Forest) and Can be Served at 286 Woodland Drive, Marienville Pa 16239.

9. R. Irwin (Irwin), is the Current Superintendent of Forest and can be Served at 286 Woodland Drive, Marienville Pennsylvania 16239.

10. J. Blicha (Blicha), and I. Gustafson (Gustafson), are both Deputy Superintendent at Forest and Can be Served at 286 Woodland Drive Marienville Pennsylvania 16239.

11. E. Mongelluzzo (Mongelluzzo), was a Former Deputy Superintedent at Forest and Can be Served at 286 Woodland Drive, Marienville Pennsylvania 16239.

3

12. C.P. Deal (Deal) and J. Alexander (Alexander) are both Majors at Forest and Can be Served at 286 woodland Drive, Marienville Pennsylvania 16239.

13. Weiland, is a Captain at Forest and can be Served at 286 woodland Drive Marienville Pennsylvania 16239.

14. J. Walker (Walker), A. Deimer (Deimer), G. Lowe (Lowe), S. Kopchick (Kopchick) J. Beatty (Beatty), R. Bell (Bell), Dietrich, Haggerty, Duffy, and Hollis are all Lieutenants at Forest, and Can be Served at 286 woodland Drive, Marienville Pennsylvania 16239.

15. J. Kundick (Kundick), is the Security Captain at Forest and can be Served at 286 woodland Drive Marienville Pennsylvania 16239.

16. Couch, is a Sergeant at Forest, and Can be Served at 286 woodland Drive, Marienville Pennsylvania 16239.

17. N. Carbon (Carbon), R. Adams (Adams), K. Mohney (Mohney), J. Beatty (Beatty), K. Clark (Clark), T.D. Spencer (Spencer), K. Bauer (Bauer), J. Minich (Minich), B. Rittenhouse (Rittenhouse), A. Ferguson (Ferguson), T. Williams (Williams), A.S. Richards (Richards), S. Bentley (Bentley), E.G. Moores (Moores), S. Crose (Crose), Z. Termine (Termine), T.K. Yount (Yount), J.J. Mowery (Mowery), J. Bullers (Bullers), Blum, McCracken, McNaughton, Hagg, Steeler, A.J. Moore Becker, B. Moore (Moore), Shelly, Guarneri are all Correctional Officers at Forest and Can be Served at 286 woodland Drive, Marienville Pennsylvania 16239.

18. L. Fiscus was the Former Hearing Examiner at Forest and can be Served at 286 woodland Drive, Marienville Pennsylvania 16239.

19. J. Dupont (Dupont), is the Current Hearing Examiner for the Department of Correct and Can be Served at 286 Woodland Drive, Marienville Pennsylvania 16239.

4

20. S. Deeter (Deeter), K. Hill (Hill), and B. Avenali (Avenali), are all Registered Nurses at Forest and be served at 286 Woodland Drive, Maitenville Pennsylvania 16239.

21. Ferdarko, and J. Smith (Smith), are both Registered Nurse Supervisors at Forest and can be served at 286 Woodland Drive, Marienville, Pennsylvania 16239.

22. M. Depew (Depew), is a Licensed Practical Nurse at Forest and can be served at 286 Woodland Drive, Marienville Pennsylvania 16239.

23. K. Smith (Smith) was the former Correctional Health Care Administrator at Forest and can be served at 286 Woodland Drive, Marienville Pennsylvania 16239.

24. J. Wilson (Wilson), is the PREA Coordinator at Forest and can be served at 286 Woodland Drive, Marienville Pennsylvania 16239.

25. B. Rumcik (Rumcik), is the Medical Records Supervisor at Forest and can be served at 286 Woodland Drive, Marienville Pennsylvania 16239.

26. Maxa, was the former Medical Doctor at Forest and can be served at 286 Woodland Drive, Marienville Pennsylvania 16239.

27. W. R. Wagonseller, was a former Psychology Services Staff at Forest and can be served at 286 Woodland Drive Marienville Pennsylvania 16239.

28. Defendants are sued in their personal capacity for damages, and in their official capacity for injunctive and declaratory relief.

5

### III. Statement of Facts

29. In Between April of 2022 and March of 2024, while Plaintiff was housed at Forest in the restricted housing Unit (RHU), he has routinely been Subjected to several Forms of retaliation, negligence, defamation deliberate indifference to his safety and serious medical condition of Asthma and serious Mental health disorder of Anti-personalitie disorder.

30. In retaliation of Plaintiff filing prison grievance, PREA complaints and Inmate abuse Complaints against staff members at Forest the Defendants had established and maintained a widespread practice of the following:

A. Contaminating and/or depriving him of his meals.

B. Using extreme Use of force against him with Olearsin Capsicum (oc) Spray and with physical restraints.

C. Strip Searching him in an inhumane and degrading manner.

D. Falsifying his medical, Misconduct, and Investigative records and reports.

E. Housing him without any running water, shower, exercise, toilet paper or soap For several days.

F. recklessly interfering with and/or discontinuing prescribed treatment

G. Conspiring to Cover up corruption by refusing to document his injuries.

H. Defaming and libeling his character.

31. On April 19, 2022, Rittenhouse had turned his back towards the camera and recklessly and maliciously spit directly into Plaintiff lunch meal, and informed the Plaintiff that he did this because of Plaintiff filing paperwork against officers at Forest.

6

32. Plaintiff had immediately communicated with Mohney over his ~~cell~~ in-cell intercom system about what Rittenhouse said and done, aforementioned, to which Mohney had replied saying that Bell acknowledged Plaintiff Complaint about Rittenhouse, but said that he would not intervene, nor give him a different tray of food, because of Plaintiff filing paperwork against officers at Forest.

33. Upon collecting Plaintiff's contaminated lunch tray, and before turning on the RHU's hand-held video/audio recorder, Rittenhouse threatened to have him and other officers at Forest assault Plaintiff for filing paperwork.

34. Moments later, while Plaintiff's food aperature was open, Rittenhouse left from the front of his cell screaming "Assault", with intent to make it appear that Plaintiff had assaulted him so that him and officers could assault him.

35. Moments later, Lowe had secured Plaintiff's wicket to the food aperture without any incident showing that Plaintiff was being compliant and not assaultive as he previously wrongfully accused of.

36. Moments later, despite Plaintiff being compliant with Doc rule and regulation, Crowl, in conspiracy with Rittenhouse, placed a glass shield in front of his cell and then threatened to carry out Rittehouse's previous threat, stating that they were going to gas his cell with OC spray and hope that he died from an asthma attack for filing paper work against Forest officers.

37. Such threat from Crowl additionally confirms him and other officer knowledge of the Plaintiff being asthmatic to which, pursuant to Doc policy, is a contraindication for the use of OC spray, thus, creating a protected liberty interest.

38. In Conspiracy with Forest officers to Use Unreasonable and excessive Force on Plaintiff, and in reckless disregard for Plaintiff's diagnosed history of Asthma Hill had knowingly and maliciously authorized Dietrich and his cert-Team the ability to Use Oc Spray on Plaintiff.

39. Moments later, and without Plaintiff being noncompliant to Doc rules, or being an Immediate threat from behind his closed cell door, Dietrich authorized certteam members Moore, Ferguson, Becker, williams, Beatty, clark, Adams, Hagg, steele, shelly McCracken, McNaughton and Gwarneri, to approach Plaintiff's cell door and deploy Oc into his cell.

40. Upon spraying oc into Plaintiff's cell, he had immediately began to Asphyxiate with other respiratory issues due to him being asthmatic.

41. Upon being handcuffed and removed from his oc contaminated cell by the cert team, aforementioned, Plaintiff was taken to the RHU triage room, where Hill had refused to decontaminate him, nor did she check his vital Signs to determine how the oc spray had adversely affected his pulse rate, respiratory rate, body temperature, and blood pressure.

42. Moments later, without being asked or being in noncompliance to a strip search while in the RHU medical triage room, Hill had recklessly, and in reckless disregard for Plaintiff's privacy, authorized the aforesaid certteam member to rip off Plaintiff's clothing in a dehumanizing, degrading, and inhumane manner.

43. In Conspiracy to Falsely and Fraudulently Falsify reports against Plaintiff, Dietrich and Deal made it appear as if the reason for deploying oc spray into his cell was due to him having Something tied around his neck, which allowed for them to Further degrade, and dehumanize Plaintiff by ordering for him to wear a paper smock for 3 consecutive days, despite there being no confiscation of items receipt (KIR) of the alleged item Used to place around his neck.

8

44. Moments later Plaintiff was placed into a cell that had no running water, soap, or toilet paper, which Crowl informed him he would be denied access to these necessities because of him filing paperwork on officers at Forest.

45. At approximately 1:12 pm that same day, Crowl had appeared to empty out an entire canister of oc spray into Plaintiff's cell upon authorization of Deal, and before receiving medical clearance, and left Plaintiff inside of the oc Contaminated cell, asphyxiate, until approximately 2:50 pm.

46. Shortly after Plaintiff was oc sprayed by Crowl, Bell and Carbon arrived at Plaintiffs Cell, and also denied him safety and medical treatment.

47. However, upon the time in which the aforementioned cert team came to take Plaintiff from out of the oc contaminated cell to medical triage in the RHU to be examined Hill had recklessly refused to decontaminate Plaintiff, check his vital signs, nor did she document his expressed pain and injuries, with clear intent to cover up the Corruption caused by officers at Forest.

48. Moments later, Haggerty, and the aforementioned cert team, had escorted Plaintiff back to the same oc contaminated cell that Crowl sprayed him in, which had oc nearly on every inch of his cell, furthering Plaintiff breathing problems due to his asthma.

49. Upon securing Plaintiff inside of that cell with Plaintiff handcuffed from behind, while in compliance with all instructions, Haggerty and the aforesaid cert team, however, began to unreasonably and excessively pull the tether that was connected to the handcuffs, with reckless and malicious intent to cause Plaintiff foreseeable pain and injury to his hands, arms, and wrists.

9

50. With intent to fraudulently obstruct security concerns, ~~they~~ Haggerty made false allegation of Plaintiff resisting and refusing to allow his officers to remove the handcuffs while on handheld video/audio recorder, to make it appear as if the Plaintiff was non compliant and use of force justified.

51. Moments later, while Plaintiff was still being tormented with the cert team pulling aggressively on the tether, Haggerty deployed an entire fire extinguisher of oc spray into Plaintiff cell.

52. Plaintiff Immediately began to asphyxiate and go into respiratory distress, while painfully saying that he couldn't breath which was all being video as well as Audio recorded.

53. Hill, in reckless disregard for Plaintiff's asthma, maliciously and carelessly had wrongfully gave Haggerty medical clearance to use oc spray on Plaintiff

54. Upon being escorted back to the RHU medical triage room, Hill had recklessly refused to decontaminate Plaintiff, check his vital signs and failed to document his pain and injuries that was expressly reported to her while on video/audio recording.

55. Hill had also falsified Plaintiffs medical records Under DC-2157 Medical Injury report procedures, by only documenting 2 incidents of oc spray deployment on April 19, 2022, when he was actually sprayed 3 different times that day and wrongly misdocumented the 3rd oc spray incident as occurring on April 14, 2022.

56. Despite Hill falsifying Plaintiffs medical injury report records stating that he had no injuries with intent on covering up the ~~corrupted~~ Corrupt officers Use of force, aforementioned, Plaintiff sustained a swollen left and right wrist, bruising with Abrasion, with welts and a gash on his left Wrist to which Hill denied treatment for.

10

57. Hill further deprived Plaintiff of clothing, bedding, Hygeine items, and a Shower for several days while Plaintiff was being dehumanized and degraded in a paper smock.

58. On April 20th and 21st, Kopchick and Blum deprived Plaintiff of every meal due to him filing paperworks against officers at Forest.

59. On April 22nd and 23rd, Plaintiff informed Deimer of Blum harassing him and threatening to contaminate his meals with bodily fluids, and Blum depriving him of his clothes, bedding and other necessities, to which Deimer failed to take reasonable measures to correct in conspiracy to retaliate for him filing paperwork.

60. On April 26, 2022, Walker informed Plaintiff that he knows of him being asthmatic, yet could care less if Plaintiff dies, freezes, and/or starves, thus clearly having no regard for Plaintiff's safety, health and well-being.

61. Then for no justifiable reason except to retaliate for Plaintiff filing paperwork on Forest officers, Walker placed him on numerous arbitrary and capricious restriction which deprived him access to the law library, shower, cell cleaning, property, and razor, which also included a finger food modification meal bag that did not have adequate nutrition.

62. Sometime in between June and July of 2022, even though Plaintiff submitted Inmate Abuse Complaints about all 3 aforementioned use of excessive force incident, Beatty had only initiated the investigation on the last incident, thus obstructing security procedures.

63. Upon interviewing Plaintiff about the 3rd Use of Force incident, Beatty, with clear intent to obstruct justice and cover up his colleagues corruption, denied the Plaintiff's Inmate Abuse complaint informing Plaintiff that they had to stick together as staff, and told Plaintiff to stop filing paperwork or he would continue to be mistreated.

64. On June 2, 2022, at Plaintiff's 90 day Program Review Committee (PRC) hearing the informed Gustafson, Blicha, Mongelluzzo, Deal, Irwin and Oberland of him being denied food and basic necessities, and being routinely sprayed with oc despite being Asthmatic.

65. However, Gustafson responded to Plaintiff's complaints by stating that they did not care about his problems, and that it wasn't his responsibility to protect Plaintiff but to protect his officers at Forest to whow Plaintiff keep filing paperwork on.

66. Gustafson, Blicha, Mongelluzzo, Irwin, Deal and Oberlander began to laugh, thus showing that Plaintiff health, safety, and well-being was at jeopardy without having any form of Protection from Forest Administration due to his exercise of his right to utilize procedures that the Doc, Little, and Harry had in place as an Adminstrative remedy.

67. On October 13, 2022, while being escorted to A misconduct hearing before Fiscus by Minich and Spencer, Spencer threatened to assault Plaintiff for filing paperwork against officers at Forest. Spencer had also called him a Faggot.

68. Upon entering the room for a misconduct hearing, Fiscus had Immediately began to be disrespectful to Plaintiff by stating that he was the Faggot that everyone talks about that keep filing paperwork, and for him not to even state how he Pleads to the misconduct since it had already been agreed upon by her and Forest Administration to find him guilty

12

69. Upon returning to his housing Unit while PRC was conducting a hearing, in fear of his safety due to Spencers aforementioned threat of violence, Plaintiff laid on the ground right outside of the PRC Hearing room and began yelling out to them for Help.

70. However, Gustafson, Blicha, Deal, Mongelluzzo, Irwin, weiland and Walker had all Ignored Plaintiff and moments later, ordered Richards, Spencer, and Minich to have Plaintiff removed.

71. Upon picking plaintiff up off of the ground, Richards, Spencer, Carbon and Minich Carried him in front of DD-1005 cell in the RHU, to which they then recklessly and maliciously dropped him onto the hard floor and then hogtied his hands and Feet together with handcuffs and a tether.

72. weiland had corruptly authorized his subordinate officers to pull the tether and injury Plaintiff's scrotum in the process. Richards, Spencer, and Minich Complied.

73. Upon being placed into the cell and Uncuffed by Spencer, Minich had then began to deploy what appeared to be an entire canister of Oc spray into Plaintiff cell despite Plaintiff being compliant and not in violation of any Doc rule.

74. Instead of obtaining a medical staff member to get medical clarance for the Use of oc spray, Minich placed Plaintiff at foreseeable risk of harm, to which him, Richards, Spencer, and walker had left him in the cell to asphyxiate for a substantial period of time, where he complained of breathing problems.

75. Despite Plaintiff complaining about breathing impairment caused by the Oc spray Carbon, Richards, Spencer, and walker delayed Plaintiff from receiving access to emergency treatment by intended to Unreasonably Strip search him even though he was just out of his cell only seconds ago.

13

76. In addition, when Deeter arrived on the unit to medically assess Plaintiff, Walker had intentionally and recklessly delayed such assessment by refusing to let Deeter assess him.

77. Upon Plaintiff finally being stripped out and escorted to triage, despite Deeter verbally acknowledgy that Plaintiff had asthma on video/Audio recording, Deeter had recklessly, with intent to cover up the aforesaid officers use of excessive force with OC spray, had falsified Plaintiff's medical injury report file by alleging that he did not have asthma.

78. Upon his return to the housing Unit, Plaintiff received a fabricated Misconduct report by Bauer of an allegation of assault, that was Fraudulently reported as a means to cover up and unjustly justify the aforsaid excessive use of force.

79. On October 17, 2022, Plaintiff filed grievance numbers 1002160 and 1002151 about him being asthmatic and exposed to OC spray in violation of DOC policy however, Kopchick, Deal and Irwin in attempt to cover up their subordinates Misconduct, had Knowingly falsified their grievance responses.

80. On October 18, 2022, plaintiff submitted a written letter to Little about the OC spray exposure, retaliation, and the falsifying of documents, to which Little failed to take any reasonable measures to cease the reported staff corruption.

81. On October 27, 2022, Plaintiff submitted a sick call from pertaining to the incident occurring October 13, 2022, where he complained about having breathing complications, and requesting to be placed on his inhaler for at least 3 times daily

82. In Conspiracy to cover up the aforesaid excessive use of force, On November 2, 2022, Fiscus alleged that the Camera on the housing Unit and inside of Plaintiff's cell were inoperable and Unable to view the incident, yet, nevertheless had found Plaintiff guilty based upon Fraud and Corrupt motives.

14

83. On November 5, 2022, Hill denied Plaintiff an inhaler and stated that it would be better if he just died, in clear reckless disregard to Plaintiff's health and safety.

84. On November 5, 2022, Dopeus, in furtherance of covering up officers use of excessive force with oc spray, falsified Plaintiff's medical records, and despite of having knowledge of Plaintiff being asthmatic, denied him an inhaler therefore.

85. On November 6, 2022, Plaintiff filed grievance number 1005391 in regards to Hill depriving him of an inhaler despite having knowledge of him having asthma.

86. In furtherance of a conspiracy to cover up the aforesaid excessive use of force incidents with oc spray and maintain false medical records, Avenali, Smith, and Irwin knowingly and with corrupt intent, denied Plaintiff's grievance.

87. On November 7, 2022, Plaintiff submitted another sick call form about him having breathing impairment complications, but has not been seen.

88. Plaintiff had then submitted a request form to both Irwin and Wilson, which stated that he wanted to file a PREA complaint on Smith for repeatedly accusing him of being denied an inhaler for placing it into his rectum, which clearly is libel and defamation of character and derogatory sexual remarks that isn't true.

89. On November 17, 2022, A physician by the name Dr. Alexander had approved the Plaintiff for an inhaler due to his asthma and complaints of breathing complications, to which Smith had subsequently discontinued to delay and deny Plaintiff prescribed treatment, with intent to further cover up staff corruption and to maintain falsified medical records.

90.

40. Smith and RNS Smith maintained the aforesaid libel and defamation of Plaintiff's Character to discontinue his prescribed inhaler on November 30, 2022

41. In between October 2022 and December 2022, Plaintiff submitted several request forms to RNS Smith, Avenali, Ferdarko, CHCA Smith, and Romeik about Plaintiff having asthma with breathing problems, however, in reckless disregard for Plaintiff respiratory disorder, they acknowledge Plaintiff's complaints and knowingly failed to take any reasonable measure to correct his medical records.

42. On December 14, 2022, Plaintiff was informed under grievance number 1003741 that Maxa had discontinued Plaintiff's diagnosis of asthma on August 30, 2021 which clearly shows how Maxa carelessly and recklessly deprived Plaintiff of necessary treatment without informing him of it for over a year.

43. On April 10, 2023, Plaintiff had submitted 3 PREA complaints on 2 RHU personnel for Sexual Harassment, due to the 2 RHU officers continuing to make sexual comments about his penis by calling him man dihgo where the 2 officers recklessly and carelessly made him feel uncomfortable and sexually violated.

44. On April 17, 2023, moore was going around collecting the yard list on J.D. pod, when moore arrived at Plaintiff cell, Plaintiff informed moore to place him on the yard list

45. After, moore collected the yard list for J.D pod he began passing out breakfast trays on the Pod.

46. Upon moore approaching plaintiff cell, moore said it's about time your faggot as came outside that cell now we all can fuck you up since you like filing paper work on Forest officers, as he gave him his breakfast tray inside the Secured food aperture

97. During the collection of trays, Moore have arrived at his cell to pick-up plaintiff tray he said "I hope you enjoyed your food, because I spit in your tray since you like filing paperwork. As Plaintiff returned his contaminated tray in the secured food aperture.

98. Plaintiff had immediately communicated with Mohney over his in cell inter com system about what moore said and done, Aforementioned to which Mohney had replied saying that Bell acknowledge Plaintiff's complaint about moore but said that he would not intervene because Plaintiff file paperwork against forest at forest.

99. Moments later, Mowrey and Yount came to Plaintiff cell to escort him to the shower so he can be strip search, before taking him to yard.

100. As Plaintiff was placed into the shower on c-Pod by Yount and Mowrey, Yount proceed to conduct the strip search on Plaintiff. Mowrey began yelling on c Pod "Moore is right wallace is a pussy and a faggot he's not going to do nothing as the numerous officers started laughing while he was being escorted to yard.

101. Moments later, while Plaintiff was in yard an inmate approach plaintiff and said that Yount and Mowrey told him and several other inmates that he was a homosexual and a snitch because He like filing paper work on forest officers.

102. Mowrey and Yount, reckless and in recklessly, careless and Malicious intent of placing plaintiff life in Jeopardy by intentionally labeling him as a homosexual and snitch with the intent to incite inmates to assault plaintiff

103. Moments later, Duffy and the cert-Team/John Doe's came to the yard, where Plaintiff was located as Duffy gave him a direct order to cuff up as he complied with the order that was given.

104. While he was being taken out the Yard holding Cage, the CERT-Team/John Doe's Tryed to make it seem like Plaintiff was being non-compliance as, the CERT-Team/John Doe's Use excessive Force by slamming his head on the ground while he was in handcuffs

105. Plaintiff was then placed in a restraint chair, and was transported to triage, when he have enter triage Hill and Deeter was the two present Nurses as they both failed to properly examine him for any medical injuries to cover up the Corruption that was lead by the officers at Forest. As he substained, bursing and swelling above his left eye.

106. Deeter and Hill, had refused to take Plaintiff vital signs, nor did they document his expressed pain and injuries, with clear intent to cover up the Corruption Caused by officers at Forest.

107. Moments later, Plaintiff was being escorted to J-Block receiving area to be strip Search and during the strip search Plaintiff ask to speak with psychology.

108. Plaintiff is on the mental health rooster Under a C-code stability and is diagnose with Anti-Personality disorder.

109. Moments later, Plaintiff was being escorted back to his cell and was secured.

110. While your window was covered, the officer did not Know why he were Unresponsive, Bentley have made 3 security rounds and during those rounds She said "Inmate Wallace in J0-12-cell is a child molester and he's a snitch he like filing paperwork on Us officers at Forest.

111. Bentley reckless and in recklessly, careless and malicious intent of placing Plaintiff life in Jeopardy by intentionally labeling him a child molester and snitch with the intent to incite inmates to assault Plaintiff.

18

112. Moments later, Wagonsellor came and approached plaintiff door, As he did not know why plaintiff was covered up, Wagonsellor, said now if you dont responed we will have to spray you with oc, an nurse deeter told Us you got asthma and Authorized Us to spray you.

113. Wagonsellor Continued to make Several more attempts As he did not Know why Plaintiff was still Cover-up as wagonsellor said if you make Us Spray you we will Fuck you up, and deem everything behavior not psychological, plus if you try and Attempt to File paper work, all Security going to do is retaliate and write you up.

114. Such threat from wagonsellor additionally Confirms him and other officers Knowledge of Plaintiff being asthmatic to which pursuant to Doc policy for the Use of Oc Spray thus Creating a Protected liberty Interest.

115. In Conspiring with forest officers to Use Unreasonable and excessive force on Plaintiff, and in reckless disregard for Plaintiff diagnosed history of Asthma and mental health diagnosed history of Anti-Personality disorder Wagonsellor and Deeter had Knowingly and maliciously authorized Couch and numerous other officers the ability to Use Oc Spray on Plaintiff

116. Moments later, Wagonsellor Call over his radio an said "Inmate is Unrespansive" need Staff assistance as the abundance of officers ran on JD-pod to his location.

117. Moments later, and without Plaintiff being non-compliance to Doc rules or being an immediate threat from behind his closed cell door, Deeter authorized Couch to approach Plaintiff cell door and deploy oc into this cell.

118. The officer did not Know why plaintiff was Unresponsive and despite Correctional training in situations like this directing officers to obtain a shield and proper gear to enter your cell for being non-responsive, instead the officer deployed Oc spray, which did not Conform to such training and was therefore deem Inappropriate.

19

119. As a result of these officers failing to conform to it's training she had also discriminated against Plaintiff by Using Oc upon an asthmatic, to which placed you in extreme danger of your health.

120. Despite policy Creating a liberty interest to protect Asthmatics from the Use of Oc Spray the officers deprived plaintiff of that protected liberty interest , thuss denying you your right to due process.

121. By reason of Such Use of Spray failing to Confirm to officers training discriminating , and to which deprived you of a protected liberty interest, clearly Shows Such force being excessive.

122. Upon Spraying Oc into Plaintiff's cell, he had immediately began to asphyxicate with other respiratory issues due to him being Asthmatic.

123. While Plaintiff Continued to be Cover up, Mowrey recklessly, Carelessly and Malicious intent to Cause harm by encouraging, Spencer, Bauer, Bullers, Termine Moores, to run into his cell as spencer and Bauer said "No" ! we can see him he's right here on handheld video/Audio recorder device.

124. Moments later, Plaintiff have Un Cover his cell door window as he couldn't breeth where he started" to Cough from the Oc Contaminated cell, as he was forced to Strip out as a form of torture in knowing plaintiff is asthmatic.

123. Doc policy States that when ever Oc is deployed into a inmate cell the inmate most be emergency Cell exstracted.

124. Before being handcuffed and removed from his oc contaminated cell couch informed the officers on handheld video/Audio record device to take him to (P.o.c) Psychological Observation Cell, that is located in medical. As the officers in recklessly disregard Plaintiff mental health status, where he is on the mental health rooster Under a c code as he is diagnose with Anti-Personality disorder

20

125. Due to Plaintiff being diagnose with Anti-Personality disorder his psychosis cause him to be verbally and physically aggressive.

126. Upon being handcuffed from behind, while in compliance with all instruction, Bell and the aforesaid officers, however began to unreasonably and excessively pull the tether that was connected to the handcuffs with reckless and malicious intent to cause plaintiff foressable pain and injury to his hand, arms and wrist.

127. With intent to fraudulently obstruct security concerns, Bell and numerous officers made false allegation of plaintiff resisting and refused to allow his officers to place on the spit hood, while on handheld video/audio recorder device to make it appears as if plaintiff was non-compliant and use of force justified.

128. Moments later, while Plaintiff was still being tormented by Mowrey, Termine Spencer and Moores, Termine and Mowrey aggressively choked Plaintiff, while they tried to forefully pushed him back into the Oc contaminated cell.

129. Moments later, Bell instructed the officer to take plaintiff down to the ground, As the officer continued to use excessive force maliciously and recklessly with the intent to cause harm, by Mowrey holding his legs as termine strike plaintiff to the face area numerous times, as Spencer and Moores pulled aggressively on the tether that was connected to the handcuffs.

130. Upon being pick-up off the floor and placed in the restriant chair, Wagonsellor, Bullers, Bentley, Moore, Bauer, Couch and Deeter all stood around and watch the assault that was lead by several officers, as they all violated the code of ethics by failing to report the abuse as they recklessly and carelessly condone the use of excessive force by turning a blind eye and deaf ear to the illegal conduct.

130. Upon being transported to triage, Deeter ask plaintiff do he have any injuries he have said "Yes" Termine and Mowrey chocked him and Termine punched him all in his face several times and his right eye is swollen.

132. Deeter, in reckless disregard for Plaintiff asthma maliciously and carelessly had wrongfully gave couch medical clearance to use oc spray on Plaintiff.

133. Despite Deeter falsifying Plaintiff Dc-457 medical injurie report records stating that he had no injuries with reckless intent to cover up the corruption for the officer use of force, Aforemention Plaintiff substained a swollen right eye, left and right wrist, bursing with abrasions and swollen throat to which Deeter denied treatment for any injuries and failed to take any pictures of his injuries.

134. Moments later, Plaintiff was transported to J-Block receiving area, to be Strip search as he complied with the strip search, Plaintiff went non-responsive as he refused to talk in the holding cage.

138. Upon Crose taking over the handheld video/audio recording device, Plaintiff had immediately communicated with Crose about, Aforemention officer on what was said and done, as Crose recklessly disregard for Plaintiff safety and failed to report the abuse under the Code of Ethics that is in Doc policy.

139. Moments later, Haggerty came down with the Cert Team/John Doe's, where Haggerty threaten to spray him because he was refusing talk were he wouldn't put his clothes on, Haggerty said once you refuse all orders we have the right to spray him to gain compliance where plaintiff was placed in a medical smock.

22

140. Upon Plaintiff being placed in a Medical smock Haggerty stated fabricated information on handheld video/audio recording device, saying that plaintiff was going to be on a consistent watch as he wasn't placed on one.

141. During the escort back to his cell plaintiff was placed back into the same UC Contaminated cell that had no running water, soap, or toilet paper where he would be denied access to these necessities because of him filing paper work on officers at Forest.

142. Medical further deprived Plaintiff of clothing, bedding, hygeine items and a shower for several days while he was being dehumanized and degraded in a smock.

143. Therefore no justifiable reason except to retaliate for Plaintiff filing paper work on Forest officers, Bell placed him on numerous arbitaray ~~serious~~ capricious restriction which deprived him access to the law libaray, shower, cell cleaning, property and razor which also included a finger food modification bag that did not had adequate nutrition

144. On 4-21-23, Plaintiff had another inmate to file a abuse allegation on the grievance system pertaining to the unjustified use of ~~force~~ Force that was lead by the officers on 4-17-23. Due to Moore, Moores, Spencer, Mowrey and numerous other officers deprived him of his ability to file any paper work ~~numerous~~ in retaliation. in order to Cover up the Corruption.

145. On 5-3-23, Kopchick was making rounds in the RHU on JU pod, when this Conducting officer arrived at plaintiff cell asking him did he ask to speak with him as he said "No"

146. Upon Plaintiff standing at his cell door, Plaintiff received a fabricated Misconduct report by Kopchick of an allegation of threatening, that was fraudulent report as a means to cover up the Unjustly justify the aforemention excessive Use of force in redaliation.

147. On 5-4-23, at Plaintiff's 90 day Program Review Committee (PRC) hearing he informed Irwin, Blicha, Gustafson, Deal, Alexander and Wagonseller, about him being denied basic necessities, being routienly spraid with OC despite being Asthmatic, and with numerous officers Using excessive force

148. However, Blicha responded to Plaintiff complaints by saying "that's is a little bump in the road and we can move past this", and honestly we don't care about his problem, and it wasn't his responsibility to protect Plaintiff but to protect his officers at forest, to whom Plaintiff keep filing paper work on.

149. (PRC), Conspired in the Corruption of Covering up and Condoning the excessive force by turning a blind eye and deaf ear to Plaintiff Complaints in Violation of the Code of ethics in failing to report the abuse and/or to place an investigation

150. Irwin, Blicha, Deal, Alexander, Gustafson and Wagonseller all began to laugh, thus Showing that plaintiff health, safety and well being was at deopardy without having and form of protection from forest administration due to him exercising his right to utilize procedures that the Doe, Little and Harry had in place as an administrative remedy.

151. On 5-8-23, while being escorted to a misconduct hearing before J. Dupont' Minich and another Unknow officer, where Minich informed Plaintiff that Captain Kundick called Dupont and told him to find you guilty

152. Upon entering the room for a Misconduct hearing Dupont was on the video screen, Dupont said there's ain't no point of pleaing not guilty I'm going to find his officer more creditable then a inmate, Kundick called him and told him to find plaintiff guilty

24

153. Upon leaving the room from a Misconduct hearing Dupont, told Minich to not give plaintiff any appeal forms since he like filing and flooding his officers with paperwork.

154. On 5-18-23, Plaintiff received his Program Review Committee Rational, stating Mr. Wallace said that the officers is being Unfair, As they acknowledge his Complaint / Concerns and failed to investigate in retaliation in order to Cover up the Corruption, As they Continued to turn a blind eye and deaf ear to his Concern

155. On July 11, 2023, Plaintiff filed another PREA Complaint on 2 RHU Personnel for taking him into the office as he was sexually assaulted by 2 RHU Personnel as they recklessly disregard his safety by Continuously gropping and grabbing his penis while he was in handcuffs and shackles.

156. On 8/24/23, He had received a Correspondence Dated 8/8/23 From David Radzi ewicz, acknowledging his Complaints he had filed with Case number# 2023-P-580, 2023-P-579, 2023-P-578 that was filed on 4/10/23 as he also acknowledged many other PREA Complaints in David Radziewicz's Correspondence as he recklessly disregarded his Safety and Concerns for help as he turned a blind eye and deaf ear.

157. On 10/7/23, Plaintiff had submitted a PREA Complaint on another RHU Personnel for Staring at his penis while licking his lips during a strip search in a Very Sexual manner as he felt Uncomfortable and Sexually Violated

158. In Conspiracy to retaliate, On 11-6-23, he had received 3 fabricated disciplinary report / Misconduct From Hollis with Case numbers# 2023-P-580, 2023-P-579 and 2023-P-578, that was als acknowledged in David Radziewicz's Correspondence dated 8/8/23.

159. Moments later, when reading the body of all 3 fabricated disciplinary reports, Hollis said he was waiting on Bureau of Investigation and Intelligence Approval From J. Barnacle the head Director of (B.I.I), to issue 3 fabricated reports where Hollis and Barnacle both Recklessly disregarded Doc policy by retaliating against him for exercising his rights and issue False Disciplinary charges.

160. On 11:14:23, Upon being Scheduled for a hearing by the Hearing Examiner Plaintiff Informed the hearing Examiner that in the DC-ADM-804/ Grievance policy state # 18 and/or # 2M , No Inmate shall be punished, retaliated against or otherwise harmed for Use of the grievance.

161. Moments later, the Hearing Examiner Conspired in finding him guilty of the 3 fabricated Misconduct reports where he was given 45 days Dc-Time Consecutive to the the he is currently doing on handheld video/audio recorder.

162. On 11:15:23, Plaintiff was called back into the hearing Examiner room, As he was informed by the Hearing Examiner that he was right she have called Central office and Central office Confirmed that since he Used the grievance System, therefore the hearing examiner dismissed the false charges, As Hollis recklessly disregrad Doc policy by telling the hearing Examiner Contrary information to find him guilty, where Hollis recklessly and Carelessly retaliated against plaintiff for engaging in protective activity of him exercising his rights On handheld audio/video recorder.

163. On 12/7/23, Plaintiff was being interviewed by Hollis for 4 PREA's he had Filed during the interview, Hollis told him that he file's intentional PREA's on SCI-Forest officer's, is not allowed to Use the grievance System to File PREA's.

164. Moments later, He informed this officer that he going to still Use the grievance system, where Hollis tried to Use intimidation by saying "if he dont stop filing & PREA's on his offices and flooding security with paper worker, he going to find a way to have his officer's to get back even and those PREA's he filed going to get deem whats fits, So he can protect his officer's. As Hollis recklessly and carelessly disregrad for his safety by Using intimidation and/or Verbal threats to get plaintiff to stop from Using the grievance system.

165. On 3/22/24, Plaintiff was being interviewed by Hollis for 3 PREA's he filed and during the interview Hollis have said "If you continue to Use the grievance system I will continue to write you up" Hollis recklessly disregrad his safety by threatening him in order to get him from Exercising his rights in engaging in protective activity

166. On 3/29/24, He have received a fabricated Misconduct report from Hollis for a PREA incident that occurred on 10/7/23 where Hollis and Barnacle reckless disregrad his character by defaming his name in the body of the fabricated Misconduct report in trying to libel and/or have him seems as a liar where Barnacle Conspired with the retaliation by authorizing Hollis to issue a fabricated Misconduct for him engaging in protective activity and exercising his rights by Using the grievance system.

167. On 4/3/24, He was schedule for a hearing where the hearing examiner dismissed the false charges.

168. As a proximate result of the aforementioned Defendent's actions and inaction Plaintiff was and Continues to be subjected to the following:
    A. Retaliation
    B. Inhumane, degrading, and dehumanizing Conditions.
    C. Physical and psychological pain and torture.

D. hunger, Unsanitary living Area, and denied outdoor exercise

E. Permanent disfigurment and trauma to major bodily areas

F. Emotional Distress

G. Respiratory System impairment which might lead to death

H. Reviewed by incompetent medical staff and upon false records

I. Denied and Delayed Access to necessary medical Treatment

J. Fear, Mental anguish, anxiety, PTSD, and emotional Distress

K. Excessive headaches and lack of sleep

## IV. Causes of Actions

Count One: Retaliation - All Defendants Except For the Doe!

164. As aforesaid, in direct respone to Plaintiff exercising his Frist Amendmen right to file paperwork against officers at Forest, the Defendants had routinely and Systematically Used excessive force and deprived Plaintiff of humane Conditions

Count Two: Excessive force - Deal, weiland, walker, Dietrich, Haggerty, Kopchick, Beatty, Bell, Deimer, Lowe, Carbon, Blum, Mohney, Crousl J. Beatty, clark, Moore, Moures, McCracken, McNaughton Hagg, Adams, Steele, Becker, Shelly, Guarneri, Spencer Bauer, Rittenhouse, Minich, Ferguson, williams, Richards Z. Termine, Bentley, Mowrey,

170. As Aforesaid, despite Plaintiff at all times being in Compliance with all orders and Doc policies, the Defendants had routinely and Systematically issed excessive force upon him with the Use of Oc Spray, physically by hand, and by tethered restraints.

Count Three : Assault And Battery - Deal, Weiland, Walker, Dietrich, Haggerty, Kopchick, Beatty, Bell, Deimer, Lowe, Carbon, Blum, Mohney, Crowl, J. Beatty, Clark, Moore, Moores, McCracken, McNaughton, Hagg, Adams, Steele, Becker, Shelly, Guarneri, Spencer, Bauer, Rittenhouse, Minich, Ferguson, Williams, Couch, Termine, Richards, Mowrey

171. As aforesaid, the Defendants attempted and succeeded in inflicting offensive physical contact and/or bodily harm upon the Plaintiff with malicious intent and corrupt motive

Count Four : Inhumane Conditions - All Defendants Except for the Doc!

172. As aforesaid, the actions and inaction of said Defendants had knowingly and maliciously deprived Plaintiff of the basic human needs of sanitation and hygeine, clothing and bedding, clean air, drinking water, food, outdoor exercise and adequate medical care.

Count Five : Deliberate Indifference - All Defendants Except For The Doc!

173. As aforesaid, in reckless disregard for Plaintiff's serious mental health needs and serious medical condition of Asthma, the Defendants had routinely and systematically used force upon Plaintiff with Oc, and/or falsified medical records so the he would be denied access to an inhaler for his serious medical condition.

Count Six : Civil Conspiracy - All Defendants Except for the DOC!

174. As aforesaid, the Defendants had established and maintained a widespread plan to use excessive force upon Plaintiff with OC, with knowledge of him having asthma to which they routinely created and maintained falsified records to make their corrupt actions and inactions seem justified and to make it appear as if the Plaintiff did not have any respiratory distress from the repeated use of OC spray.

Count Seven - Medical Malpractice - Maxa, Hill, Deeter, Avenali, Ferdarko, J. Smith, Depeus, K. Smith and Rumcik.

175. As aforesaid, Circumstantial evidence under the legal theory of res ipsa loquitor, can reasonably infer negligence upon the Defendant, because DOC policy and state laws enforce upon them to maintain accurate medical records, to which they had failed to do in regards to Plaintiff being asthmatic and in need an inhaler, which ultimately caused Plaintiff to be routinely subjected to OC spray to which policy forbids the use thereof upon people with Asthma.

Count Eight - Supervisory Liability - Harry, Little, Oberlander, Irwin, Gustafson, Blicha, Mongelluzzo, Deal, Weiland, Walker, Dietrich, Bell, Kopchick, Beatty, Deimer, Lowe, K. Smith, Duffy, Haggerty, Alexander, Barnacle, Radziewicz, Hollis, Kundick, and Couch.

176. As aforesaid, the Defendants, in total disregard for the Plaintiff's health and safety and all been apprised of Plaintiff being asthmatic, yet, failed to take any reasonable measure to protect him from the use of OC spray, by either authorizing its use, using

30

it themselves, or receiving information and refusing to intervene

Count Nine: Libel And Slander - All Defendants Except for the Doc'.

177. As Aforesaid, the Defendants had routinely and systematically uttered, as well as filed false and malicious allegations about Plaintiff's character and personality with intent to expose him to hatred and contempt by both prison staff and prisoners, and to injure his reputation.

Count ten - Procedural Due Process - Beatty, Fiscus, Kopchick, Hollis, Kundick, wilson Barnacle, and J. Dupont and Radziewicz

178. As aforesaid, Beatty, Fiscus, Kopchick, Hollis, Kundick, Barnale, Dupont and Radziewicz, wilson, had knowingly and intentionally deprived the Plaintiff of his protected liberty interest to receive a fair and Impartial disciplinary hearing, Inmate Abuse investigation, and PREA Investigation, to which all forms of deprivation was based Upon intent to cover up corruption.

Count Eleven - ADA and RA Violation - Doc'.

179. As aforesaid, the Doc failed to reasonably accommodate Plaintiff's asthma respiratory system disability and Mental health disability of Anti-personality disorder, by failing to properly train its staff in the detection of asthma and, mental health disability and the proper procedures for Using force on inmate with a history of Asthma, and Mental Health to which resulted in disability discrimination and Plaintiff being at Serious of bodily injury and death from the repeated Use.

31

Count Twelve : Exhaustion of Administrative Remedies

180. Plaintiff have Exhaust all of his Administration Remedies through the Dc-ADM-804, Inmate Grievance System, Dc-ADM-001, Inmate Abuse System Dc-ADM-008 Inmate PREA System and exhaust every level of Appeal to Central offices

## V. Prayer For Relief:

Wherefore, Plaintiff demands judgment against Defendants, individually, and as a whole, for the following relief:

181. Compensatory damages in an amount in excess of $ 250,000.00

182. Punitive damages,

183. Declaratory judgment

184. Injunctive relief.

185. Court Costs and legal fees.

186. Such other relief that this Honorable Court deems equitable.

## Verification:

I, Shawn Wallace hereby Verify Under penalty of perjury that the foregoing facts are true and Correct to the best of my Knowledge information and belief

Respectfully Submitted

Shawn Wallace
Shawn Wallace

Executed This 26 of April, 2024
Marienville (Forest County) Pennsylvania
    Sci-Forest
    P.O. Box 945
    286 woodland Drive
Marienville, Pa. 16239

33

APR 29 '24 AM10:07
FILED_FOREST_COUNTY

In The Court of Common Pleas of

The 37th Judicial District of Pennsylvania

Forest County Branch-Civil

Shawn Wallace, Plaintiff, ProSe

v.                                    No. 38-2024

CommonWealth of Pennsylvania

Department of Correction, Harry

Little, Barnacle, D.Radziewicz; D.

Oberlander, R.Irwin, J.Blicha, R.Bell;

I.Gustafson, E.Mongellozzo, J.Alexander

C.Deal, J.Kundick, S.Kopchick, J.Beatty;

Hollis, Weiland, J.Walker, Dietrich, Couch;

Haggerty, A.Deimer, Duffy, N.Carben, Crowl;

Beatty, K.clark, B.Moore, Mc Cracken, Hagg;

R.Adams, G.lowe, Blum, K.Mahney, McNaughton;

Shelly, Steele, Becker, Guarneri, T.D.spencer;

K.Bauer, J.Minich, A.S.Richards, Maxa, S.Crose;

B.Rittenhouse, A Ferguson, T.williams, A.J.Moore;

E.G.Moores, Z.Termine, S.Bentley, RNK.Hill;

J.Ferdarko, S.Deeter, B.Avenali, M.Depew;

K.Smith, L.Fiscus, J.Wilson, J.smith, B.Rumcik;

J.J.Mowery, T.K.Yount, J.Bollers, J.Dupont;

W.R.Wagonsellor

Notice To Defend

①

You have been sued in court. If you wish to defend against the claims set forth in the following pages. You must take action within 20 days after this Complaint and notice are served, by entering a written appearance personally or by attorney, and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. You should take this paper to your lawyer at once, if you do not Have a lawyer, Go To or Telephone the office set forth below.

Central Pennsylvania Legal Services, Inc.
213 North Front Street
Harrisburg, Pennsylvania 17101
(717) 232-0581