IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN WALLACE,                          :
              Plaintiff                  :
        v.                               : Case No. 1:24-cv-152-KAP
PENNSYLVANIA DEPARTMENT OF              :
CORRECTIONS, *et al.*,                   :
              Defendants                 :

Memorandum Order

The bankruptcy stay previously entered, ECF no. 40, is lifted. The defendants' motions to dismiss at ECF no. 15 and ECF no. 18 are granted and most of the complaint is dismissed for failure to state a claim. All other pending motions are denied as moot. A pretrial schedule is given for the balance of the claims. Because I am third in line to use the courtroom for any trial that may be necessary, my flexibility with continuances will be limited.

All claims against defendants Maxa, Harry, Little, Barnacle, Radziewicz, Wilson, Alexander, Blicha, Gustafson, Irwin, Mongelluzzo, Oberlander, Avenali, Ferdarko, Rumcik, RNS Smith, CHCA Smith, Fiscus, Dupont, Yount, Walker, Duffy, Kundick, Lowe, Weiland, Dietrich, Moore, Ferguson, Becker, Williams, Betty, Clark, Adams, Haag, Steele, McCracken, McNaughton, Gauneri, Wagonseller, Bollers, Bentley, Moore, Brauer, Deeter, Blum, Carbon, Crose, Deimer, Hollis, Kopchick, and Mohney are dismissed with prejudice.

Plaintiff Shawn Wallace is in the custody of the Department of Corrections at S.C.I. Forest; his most recent sentence is from the Court of Common Pleas of Forest County after Wallace's guilty plea to aggravated harassment by a prisoner. He files complaints against prison employees, accusing them of excessive use of force and of retaliation for his filing of grievances and complaints, including complaints pursuant to the Prison Rape Elimination Act. In addition to his newest case, Wallace v. Doe, Case No. 1:25-cv-136-KAP (W.D.Pa.), *see* Wallace v. Oberlander, Case No. 3:23-cv-114-SLH-KAP (W.D.Pa.); closed February 21, 2024; Wallace v. Irwin, Case No. 3:23-cv-269-KAP (W.D.Pa.), closed June 5, 2024; Wallace v. Department of Corrections, Case No. 3:24-cv-35-KAP (W.D.Pa.), closed June 25, 2024; and Wallace v. Barnacle, Case No. 1:24-cv-115-SLH-KAP (W.D.Pa.), closed June 25, 2024. If this case looks familiar, that is because Wallace began litigating about the events described in the complaint filed in Wallace v. Oberlander in 2023, then withdrew the complaint in February 2024 and filed a new complaint in the Court of Common Pleas of Forest County that all but one of the defendants removed to this court. That one defendant had never been served (and

plaintiff has made no effort to serve her) so her consent was not necessary to removal.

Wallace's complaint names 66 served defendants, 65 employees or agents of the Department of Corrections (PA Department of Corrections, Laurel Harry, George Little, James Barnacle, David Radziewicz, Derek Oberlander, Randy Irwin, John Blicha, Ian Gustafson, Ernest Mongelluzzo, Jennifer Alexander, Charles Deal, Jason Kundick, Shane Kopchick, Justin Beatty, Colby Hollis, Derek Weiland, Jamie Walker, Jason Dietrich, Stephen Haggerty, Ryan Bell, Amanda Diemer, Mark Duffy, Amber Couch, Nathan Carben, Greg Lowe, Andrew Blum, Korban Mohney, Kenneth Clark, Blake Moore, Bradley Avenali, Kimberly Smith, Jamie Wilson, Jason Smith, Robert Rumcik, James Mowrey, Trevor Yount, James Bullers, Walter Wagonseller, Andrew McCracken, Brian McNaughton, Adam Haag, Robert Adams, Logan Steele, Kurt Becker, Jeremey Shelley, Paul Guarnieri, Troy Spencer, Kyle Bauer, Jeffrey Minich, Brennden Rittenhouse, Anthony Ferguson, Tobias Williams, Aaron Richards, Adam Moore, Elijah Morres, Zachary Termine, Seth Crose, Shanon Bentley, Kathleen Hill, Jamie Ferdarko, Shane Deeter, Jeromy Crowl, Lisa Fiscus, and Joseph Dupont, generally referred to as the corrections defendants) who moved at ECF no. 18 to dismiss Wallace's claims in part, and Dr. Maxa, a physician formerly employed as a provider of medical care at S.C.I. Forest who moved at ECF no. 15 to dismiss Wallace's First Amendment and Eighth Amendment claims.

Wallace's complaint was removed from state court, so it is not subject to all the requirements of the Prison Litigation Reform Act, but a complaint fails to state a claim under the PLRA using the same standard as does Fed.R.Civ.P. 12(b)(6). *See* Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). Therefore, under the PLRA, Fed.R.Civ.P. 8(a)(2), and Fed.R.Civ.P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As Ashcroft v. Iqbal held, a plaintiff must allege enough facts in the complaint to "nudge" a claim "across the line from conceivable to plausible." 556 U.S. at 683, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. at 570. Plaintiff must in a nonconclusory way allege facts that permit the inference that each defendant he names was personally involved in causing harm to him. Chavarriaga v. New Jersey Department of Corrections, 806 F.3d 210, 222 (3d Cir. 2015). Showing the possibility of misconduct is insufficient to show that the pleader is entitled to relief. Ashcroft v. Iqbal, *supra*, 556 U.S. at 679. Allegations do not have to be "unrealistic or nonsensical" to fail to state a claim (nonsensical allegations would be analyzed for frivolousness) because it is the conclusory

nature of allegations, rather than their extravagantly fanciful nature, "that disentitles them to the presumption of truth." *Id.,* 556 U.S. at 681. The Supreme Court gave an example in <u>Ashcroft v. Iqbal</u>: allegations that the Attorney General was the "principal architect" of an unlawful scheme and the director of the FBI was "instrumental" in executing it were conclusions not facts and without more were not enough to state a claim. *Id.,* 556 U.S. at 680-81. In short, whether alleged facts amount to a legal claim sufficient to go forward to discovery is a question of law for the Court. *See id.* 556 U.S. at 686, rejecting as conclusory plaintiff's allegation that government officials discriminated against him on account of his religion, race, or national origin for no legitimate penological interest with the comment:

> Were we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.

Inadequate allegations doom a complaint because, again *per* <u>Ashcroft v. Iqbal</u>, Rule 12 does not permit inadequate claims to continue on the theory that discovery might turn up some factual support for them: "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management" *Id.,* 556 U.S. at 685, and *id.,* 556 U.S. at 686: "Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."

Finally, a court's duty to construe *pro se* pleadings liberally and nontechnically is a command to overlook malapropisms and grammatical errors, but that has never permitted a court to construe conclusions as assertions of fact or "conjure up unpleaded facts to support ... conclusory suggestions." <u>Hurney v. Carver</u>, 602 F.2d 993, 995 (1st Cir.1979), <u>quoting</u> <u>Slotnick v. Staviskey</u>, 560 F.2d 31, 33 (1st Cir.1977), *cert. denied*, 434 U.S. 1077 (1978), or "to construct full blown claims from sentence fragments," or "explore...all potential claims of a *pro se* plaintiff." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986). A lack of facts amounting to a colorable claim against a defendant makes a complaint an inadequate complaint, not a vague one that needs to be clarified. *See* <u>Unger v. National Residents Matching Program</u>, 928 F.2d 1392, 1401-02 (3d Cir.1991). As the First Circuit observed in <u>O'Brien v. DiGrazia</u>, 544 F.2d 543, 546 (1st Cir. 1976):

> A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

The Supreme Court has held that it is not proper for a court to assume that a

plaintiff "can prove facts that it has not alleged, or that the defendants have violated … laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court more recently stated in Ashcroft v. Iqbal, supra, 556 U.S. at 687, "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."

The First Amendment prohibits retaliation for engaging in protected conduct. As Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001), and Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003) define the claim, a retaliation claim requires allegation of three elements: (1) that the inmate plaintiff took some action itself protected by the constitution; (2) that the defendant took adverse action against the plaintiff sufficient to deter a person of ordinary firmness from persisting in that conduct; and (3) that there was a causal connection between the plaintiff's protected conduct and the adverse action. If an inmate establishes a *prima facie* case, the burden shifts to the prison official defendants to show that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d at 334.

Corrections personnel (which usually means medical care providers for the reasons explained in Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)) violate the Eighth Amendment if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This requires allegation of objective harm and allegation of a more culpable subjective state of mind than negligence or medical malpractice. *See* Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999). A defendant can be deliberately indifferent only if he or she "**knows of** and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, *supra*, 511 U.S. at 837 (my emphasis). That has to be alleged by more than conclusory repetitions of the elements of an Estelle v. Gamble claim.

The summary of the complaint given by counsel for the corrections defendants is an excellent account of Wallace's allegations, and I set it out here rather than burden the reader with the original handwritten complaint:

Plaintiff claims that he was housed in the restricted housing unit ("RHU") at SCI-Forest from April 2022 through March 2024. Id. at ¶29. Plaintiff alleges that on April 19, 2022, Defendant Rittenhouse spit into his lunch for filing paperwork against officers at SCI-Forest. Id. at ¶31. Rittenhouse threatened to have him assaulted. Id. at ¶33. Moments later, Rittenhouse left from the front of his cell screaming "assault." Id. at ¶34. Defendant Crowl placed a glass shield in front of Plaintiff's cell and stated they were going to gas his cell with oleoresin capsicum ("OC") spray despite Plaintiff's claim that he is asthmatic. Id. at ¶¶36–37. Plaintiff alleges that Defendant Dietrich authorized Defendants Moore, Ferguson, Becker, Williams, Beatty, Clark, Adams, Hagg, Steele, Shelly, McCracken, McNaughton, and Guarneri to deploy OC spray against him, and that he was subsequently

sprayed. Id. at ¶¶39–40.

Following that deployment of OC spray, Plaintiff alleges that Defendant RN Hill refused to decontaminate him. Id. at ¶41. He was forced into a cell with no running water, soap, or toilet paper. Id. at ¶44. Later that same day, he was sprayed with OC spray again on Defendant Deal's authorization. Id. at ¶45. Plaintiff was taken to medical and then returned by Haggerty and others to the same cell where he had already been sprayed. Id. at ¶48. Haggerty and the CERT team pulled the tether causing harm to his wrists and hands. Id. at ¶49.Haggerty again deployed OC spray on Plaintiff. Id. at ¶51. Again Defendant Hill refused to decontaminate him and failed to treat him for abrasions on his left wrist. Id. at ¶54. Plaintiff alleges that Defendant Hill deprived him of bedding, clothing, hygiene items and a shower for several days. Id. at ¶57.

Plaintiff alleges deprivations of meals from April 21 and April 22, 2022. Id. at ¶58. He alleges that on April 26 Defendant Walker told Plaintiff that he knows Plaintiff is asthmatic and "could care less if Plaintiff dies, freezes, and/or starves." Id. at ¶60. He claims that Defendant Walker denied him various items and privileges. Id. at ¶61.

Plaintiff alleges that sometime between June and July 2022, Defendant Beatty initiated investigation on only one of three allegations of use of force. Id. at ¶62.

On June 2, 2022, Plaintiff had a 90-day Program Review Committee ("PRC") hearing with Defendants Gustafson, Blicha, Mongelluzzo, Deal, Irwin, and Oberlander. Id. at ¶64. Plaintiff complained to the committee about being sprayed with OC spray despite his asthma. He claims that they responded "by stating that they did not care about his problems." Id. at ¶65.

On October 13, 2022, Plaintiff was escorted to a misconduct hearing before Defendant Fiscus by Defendants Minich and Spencer. At that time Defendant Spencer threatened to assault Plaintiff for filing paperwork against officers at SCI-Forest and called him a homophobic slur. Id. at ¶67. Plaintiff was found guilty by Defendant Fiscus at his misconduct hearing. Id. at ¶68.

While PRC was conducting a hearing Plaintiff laid on the ground outside the hearing room and began yelling out to them for help. Id. at ¶69. Members of the PRC ignored Plaintiff and ordered him to be removed. Id. at ¶70. Defendants Richards, Spencer, Carbon, and Minich carried Plaintiff away and hogtied his feet and hands together with handcuffs and a tether. Id. at ¶71. Plaintiff alleges that Defendant Weiland "corruptly authorized" Richards, Spencer, and Minich to pull the tether causing injury to Plaintiff's scrotum. Id. at ¶72. Minich deployed an entire canister of OC spray into Plaintiff's cell. Id. at 73. He was left in the cell to asphyxiate for a substantial period of time, where he complained of breathing problems. Id. at 74. He alleges that Defendants Carbon, Richards, Spencer, and Walker "delayed Plaintiff from receiving access to emergency treatment" by strip searching him. Id. at ¶75. He alleges that Defendant Walker did not allow Defendant Deeter to medically assess him. Id. at ¶76.

Defendant Bauer filed a misconduct against Plaintiff, which he alleges was

falsified. Id. at ¶78.

On October 17, 2022, Plaintiff filed a grievance regarding the use of OC spray. He alleges that Defendants Kopchick, Deal, and Irwin falsified their grievance responses. Id. at ¶79. On October 18, 2022, Plaintiff submitted a written letter to Defendant Little about OC spray exposure. Id. at ¶80. On October 27, 2022, Plaintiff submitted a sick call pertaining to breathing complications as a result of the deployment of OC spray. Id. at ¶81. He requested to be placed on his inhaler for at least three times daily. Id.

On November 2, 2022, Plaintiff was found guilty of a misconduct by Defendant Fiscus. Id. at ¶82.

On November 5, 2022, Defendant Hill denied Plaintiff his inhaler. Id. at ¶85. On November 6, 2022 filed a grievance, which was subsequently denied by Defendants Avenali, Smith, and Irwin. Plaintiff alleges that around that time he submitted a request form to Defendants Irwin and Wilson stating that he wanted to file a Prison Rape Elimination Act ("PREA") complaint on Defendant Smith for "repeatedly accusing [Plaintiff] of being denied an inhaler for placing it in his rectum." Id. at ¶88. He alleges that Defendants Smith and RNS Smith discontinued his prescribed inhaler on November 20, 2022. Id. at ¶90.

On April 10, 2023, Plaintiff submitted three PREA complaints on RHU personnel for sexual harassment. Id. at ¶93.

On April 17, 2023, Defendant Moore approached Plaintiff and threatened him. He alleges that Defendant Moore also told Plaintiff that he spit in his tray. Id. at ¶97. Moments later, Defendants Mowrey and Yount came to Plaintiff to escort him to the shower so he could be strip searched. Id. at ¶99. Soon after, an inmate approached Plaintiff and said that Yount and Mowrey told him and several other inmates that Plaintiff was a homosexual and a snitch. Id. at ¶101.

Moments later Defendant Duffy and the CERT team came to the yard, where Plaintiff was located. Defendant Duffy gave a direct order to have Plaintiff cuffed. Id. at ¶103. Plaintiff alleges that his head was later slammed to the grounds. Id. at 104. He alleges that Defendants Hill and Deeter did not properly examine him. Id. at ¶105–106.

Sometime later, when Defendant was in his cell, Defendant Bentley announced that Plaintiff is a child molester and a snitch. Id. at ¶110. He further claims that Defendant Wagonseller came and approached his door, and threatened to have him sprayed with OC spray and that he would be retaliated against for filing paperwork. Id. at ¶112. Defendant Wagonseller called over his radio for staff assistance. Id. at ¶116. Plaintiff alleges that Defendant Deeter authorized Defendant Couch to employ OC spray against him. Id. at ¶117. Defendant Mowrey encouraged Defendants Spencer, Bauer, Bollers, Termine, and Moores to run into his cell. Id. at ¶123.

Plaintiff claims that "due to his [his] being diagnose with Anti-Personality disorder [Plaintiff's] psychosis cause him to be verbally and physically aggressive." Id. at ¶125. After being handcuffed, Defendant Bell and others pulled the tether causing pain to his

hands, arms, and wrists. Id. at ¶126. Plaintiff alleges that while being "tormented" by
Defendant Mowrey, Defendants Termine, Spencer, and Moores aggressively choked
Plaintiff while pushing him back onto the OC-contaminated cell. Id. at ¶128. Bell then
instructed the other officers to take Plaintiff down to the ground. Defendant Mowrey held
his legs as Defendant Termine struck Plaintiff about the face. Defendants Spencer and
Moores pulled on the tether that was connected to the handcuffs. Id. at ¶129. On being
picked up off of the floor and placed in a restraint chair, Defendants Wagonseller, Bollers,
Bentley, Moore, Bauer, Couch, and Deeter stood around and watched the assault take
place. Id. at ¶130.

Plaintiff was then taken to triage. Defendant Deeter asked Plaintiff if he had any
injuries. Plaintiff responded that he did, as Defendants Termine and Mowrey choked him
and Termine punched him all in the face several times. Id. at ¶131. Defendant Deeter gave
Defendant Couch medical clearance to use OC spray on Plaintiff. Id. at ¶132. Plaintiff
claims that he sustained a swollen left eye, abrasions to his arms, and a swollen throat.
He alleges that Defendant Deeter failed to give him treatment or take pictures of his
injuries. Id. at ¶133.

Moments later Plaintiff was transported to J-Block to be strip searched. Id. at ¶134.
Plaintiff interacted with Defendant Haggerty, who threatened to spray Plaintiff for
refusing to talk. Id. at ¶139. Plaintiff alleges that Defendant Haggerty fabricated
information on the handheld video/audio recording. Id. at ¶140. Plaintiff was then
escorted back to his cell that was still contaminated by OC spray. He alleges the cell had
no running water, soap, or toilet paper. Id. at ¶141. He alleges he was further deprived of
clothing, bedding, hygiene items, and a shower for several days. Id. at ¶142. He claims that
Defendant Bell placed him on numerous arbitrary and capricious restrictions which
deprived him of access to the law library as well as other privileges. Id. at ¶143.

Plaintiff alleges he received a fabricated misconduct report by Defendant
Kopchick. Id. at ¶146.

On May 4, 2023, Plaintiff again went in front of the PRC, consisting of Defendants
Irwin, Blicha, Gustafson, Deal, Alexander, and Wagonseller. Id. at ¶147. He claims he was
denied of basic necessities and routinely sprayed with OC despite his asthma. Id. He
claims the PRC members failed to do anything in response to his complaints. Id. at ¶149.

On May 8, 2023, Plaintiff had a misconduct hearing before Defendant Dupont. Id.
at ¶151. He was escorted to his hearing by Defendant Minich, who informed Plaintiff that
Defendant Kundick called Defendant Dupont and told him to find Plaintiff guilty. Id. at
¶152.

On July 11, 2023, Plaintiff filed additional PREA complaints. On August 24, 2023,
he received correspondence from PREA Coordinator Defendant Radziewicz. Id. at ¶156.

On November 6, 2023, Plaintiff received misconducts from Defendant Hollis. Id.
at ¶158. Defendant Hollis said he was waiting on the Bureau of Investigation and
Intelligence ("BII") approval from Defendant Barnacle, the Director of BII, to issue

reports as to Plaintiff's disciplinary charges. Id. at ¶159.

On November 14, 2023, Plaintiff was found guilty of three misconduct reports. He was given 45 days DC-time. Id. at ¶161.

On December 7, 2023, Plaintiff was interviewed by Defendant Hollis regarding his PREA complaints. Id. at ¶163. Plaintiff was told to stop using the grievance system to file PREA complaints. Id.

On March 22, 2024, Plaintiff was again interviewed about his other PREA complaints. He was told that he would be written up if he continues to use the grievance system to file PREA complaints. Id. at ¶165. On March 29, 2024, Plaintiff received an additional misconduct from Hollis. Id. at ¶166. A hearing was scheduled on that misconduct for April 3, 2024. Id. at ¶¶166–167. The misconduct was dismissed. Id. at ¶167.

ECF no. 19 at 2-8.

I turn first to Maxa's motion to dismiss. Maxa submits an affidavit that he was not even working at S.C.I. Forest during the times relevant to the claims in the complaint. That affidavit, although uncontradicted and unaddressed by Wallace, will not be considered because it would transform the motion to dismiss into one for summary judgment, potentially causing a delay of no benefit to anyone. Wallace's complaint states no claim against Maxa for the reason highlighted in the affidavit: Wallace's claims against Maxa are completely conclusory because Maxa is not plausibly alleged to have had any knowledge of any medical needs of Wallace or of the uses of force that Wallace alleges in 2022 and onward. Maxa is mentioned in one place, ¶ 92, where Wallace alleges that another defendant told him in December 2022 that Maxa had "discontinued" Wallace's diagnosis of asthma in August 2021. This is the basis for Maxa's inclusion in Count One, the claim for retaliation, ¶169; Count Five, the claim for "disregard for [Wallace's] serious mental health needs and serious medical condition of asthma," ¶ 173; Count Six, the claim for civil conspiracy to use excessive force, ¶ 174; Count Seven, the claim for medical malpractice, ¶ 175; and Count Nine, the claim for libel and slander. Assuming the secondhand comment about Maxa's actions in 2021 was intended to allege that Maxa took Wallace off the list of persons against whom oleoresin capsicum spray should not be used, Wallace's claim that this was negligent, deliberately indifferent, and retaliatory is solely based on the allegation that a different doctor had at some earlier time diagnosed Wallace with asthma. *See* ECF no. 26, Wallace's brief in opposition. It is axiomatic that statements in a brief do not amend a complaint, but Wallace's account even in his brief is merely that he was treated for asthma at S.C.I. Laurel Highlands before being sent to Forest. This alleges nothing about the merits of any judgment Maxa might have made in 2021, and utterly fails to tie Maxa to any event in 2022. It is overkill to explain why there are no allegations amounting to a claim of libel or civil conspiracy.

As for the corrections defendants, there is no question that claims against the defendants in their official capacities are suits against the Commonwealth and therefore are barred by the Eleventh Amendment. Wallace also fails to allege the personal involvement of most of the defendants ( Harry, Little, Barnacle, Radziewicz, Wilson, Alexander, Blicha, Gustafson, Irwin, Mongelluzzo, Oberlander, Avenali, Ferdarko, Rumcik, RNS Smith, CHCA Smith, Fiscus, Dupont, Yount, Walker, Duffy, Kundick, Lowe, Weiland, Dietrich, Moore, Ferguson, Becker, Williams, Betty, Clark, Adams, Haag, Steele, McCracken, McNaughton, Gauneri, Wagonseller, Bollers, Bentley, Moore, Brauer, Deeter, Blum, Carbon, Crose, Deimer, Hollis, Kopchick, and Mohney) in any alleged use of excessive force, and their supervisory role, or their role in processing grievances or hearing disciplinary sanctions in the wake of uses of force are not bases for liability because there is no *respondeat superior* liability in civil rights cases.

As for Wallace's conclusory claim of civil conspiracy and a retaliatory motive in all the corrections defendants' uses of force, it is implausible (in the absence of some concrete factual allegations) that even the defendants personally present, confronted at various times with situations in which **some** use of force was clearly a reasonable option (Wallace himself claims the uses of force are excessive only because of his asthma), were "really" thinking about and motivated by a pre-existing agreement to retaliate against Wallace for the paperwork Wallace submitted through the grievance system. Where every defendants' action can obviously be explained without supposition of a retaliatory motive, some concrete basis for retaliation must be alleged to state a plausible claim. Wallace alleges nothing more significant than the steady filing of grievances followed more or less closely by altercations with corrections officers, or in one case the deprivation of "every" meal for two days. What about Wallace's grievances should so inflame any defendant is not alleged or even hinted at. Wallace makes a classic circular argument: there must have been a retaliatory motive behind any actions by the defendants because a retaliatory motive would explain any actions by the defendants. Using the word "retaliation" or some form thereof does not allege retaliation.

As for the remaining claims based on the alleged uses of oleoresin capsicum spray or other physical force against Wallace, the following pretrial schedule is ordered:

1.    Discovery shall be completed by August 31, 2025. Leave to depose inmates is granted without need of additional motion.

2.    Any motions for summary judgment shall be filed on or before by September 30, 2025, with responses by October 31, 2025.

3.    If no summary judgment motions are filed, the pretrial statement of plaintiff shall be filed on or before November 15, 2025, and the pretrial statement of defendants shall be filed on or before November 30, 2025. A final pretrial conference

followed by trial may be scheduled on any available date in the term beginning January 1, 2026, or in the month following disposition of summary judgment motions, whichever is later.

The Court of Appeals, *see* Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir.2002), directs district courts to allow plaintiffs in civil rights cases leave to amend unless that amendment is futile or inequitable. It is inequitable to allow a plaintiff, after having gone through a round of motions practice that would have allowed him to amend his complaint of right, *see* Rule 15(a)(1), a further opportunity not contemplated in Rule 12(b)(6) practice. No amendment is permitted. Any claims against the defendant not served before removal are remanded to the Court of Common Pleas of Forest County.

DATE: June 2, 2025      
_____
Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to non-ECF users:

Shawn Wallace NW-6861
S.C.I. Houtzdale
P.O. Box 1000
209 Institution Drive
Houtzdale, PA 16698-1000